ST. PAUL, J.
 

 Plaintiff is the owner of three promissory notes, aggregating $2,000, executed by the surviving widow and heirs of M. F. Amrhein, dated May 13, 1925, and secured by mortgage of like date upon two certain pieces of real estate belonging to them in their aforesaid capacity of widow in community and heirs of said M. F. Amrhein.
 

 Said property was seized and sold at sheriff’s sale on January 15, 1927, at the instance of the Louisiana Trust & Savings Bank, purporting to foreclose via ordinaria an alleged first mortgage for $15,000 placed thereon by M. F. Amrhein on April 3, 1918.
 

 Plaintiff claims that the mortgage under which the property was sold had been extinguished by payment at the time of the foreclosure, “and no longer operated as a mortgage” on said property; that said mortgage, to the knowledge of Louisiana Trust
 
 &
 
 Savings Bank, was given by M. F. Amrhein, for the sole purpose of facilitating M. F. Amrhein
 
 &
 
 Co., Incorporated, in obtaining credit from said bank; that the note representing said mortgage was, as to said Amrhein individually, a mere accommodation note, and hence said mortgage and note were a mere continuing guaranty on the part of-said Amrhein, which expired at his death and covered no debts contracted by said M. F. Amrhein, Incorporated, after the death of said - Amrhein; that all indebtedness of said M. F. Amrhein & Co., Incorporated, incurred before the death of said Amrhein, had been extinguished by payment.
 

 Wherefore plaintiff prays that said sheriff’s sale be annulled, that the property be declared to belong to the widow and heirs of said Amrhein, and that plaintiff’s mortgage (canceled at the time of said sheriff’s sale) be reinstated.
 

 I
 

 The mortgage given by Amrhein (and concurred in by M. F. Amrhein
 
 &
 
 Co., Incorporated, so as to include other property belonging to the corporation) was represented by a joint and solitary note of said Amrhein, and M. F. Amrhein & Co., Incorporated, for the sum of $15,000 payable November 15, 1918, and the mortgage declared on its face that said note was “being issued for and to be ■ used as collateral security for loans made and to be made by said bank [Louisiana Trust
 
 &
 
 Savings Bank] to the said M. F. Amrhein & Co., Incorporated, from time to time.”
 

 Amrhein died May 8, 1918, leaving a widow and three minor children, all to the knowledge of said bank.
 

 Amrhein was the owner of 298 out of 300 shares of the Amrhein Company. We mention this simply as explanatory of his giving the above-mentioned mortgage; of the fact that his widow became after his death virtually sole manager of said corporation as he had been during his lifetime; of why she, after Amrhein’s death, repledged the aforesaid note for further advances made to said Amrhein Cpmpany; and of why she paid, out of her own funds, the indebtedness of the Amrhein Company existing at the death of her husband; the fact being that she and her children were the sole parties
 
 *144
 
 interested in said corporation, the other two shareholders being only nominally so.
 

 But we do not mention it as showing chat Amrhein and the corporation were one and the same; for the rule of law is that a corporation continues to exist as a separate legal entity until legally dissolved, and the corporation and its shareholders are not one and the same, even though the number of shareholders be reduced to one. Mioton v. Del Corral, 132 La. 730, 61 So. 771; State v. Railroad, 106 La. 513, 31 So. 115; In re Belton, 47 La. Ann. 1614, 1618, 18 So. 642, 30 L. R. A. 648.
 

 II
 

 At the time of Amrhein’s death (September 8,1918) the Amrhein Company owed the bank $15,000, and the bank held in pledge therefor the note for $15,000 secured by the mortgage of April 3, 1918. I-Iis widow, as we have said, took over the sole management of the company. She collected, as life insurance upon her husband, a sum in excess of $15,000; and with said life insurance money she paid the $15,000 then due the bank, and took possession of the $15,000 note of her husband, which had been pledged to secure the same.
 

 Thereafter the company again, needed money, and between May 5, 1920, and June 17, 1921, the widow borrowed for the company $17,000, and pledged to the bank the mortgage note of April -3, 1918. This amount was still due the bank when it foreclosed in said note.
 

 III
 

 It is settled that, when a mortgage is given for a specific debt, payment extinguishes both debt and mortgage. Hence, where a note secured by mortgage is issued as a primary obligation, and is afterwards paid, the subsequent reissue of the note does not revive the mortgage by which it was originally secured. On the other hand it is equally well settled that, when note secured by mortgage does not represent any specific debt and is not issued as a primary obligation, but is intended only for future use as collateral security for debts incurred or to be incurred, and does not represent such debts themselves, then the payment of the debts, for which it has thus been collaterally pledged, is not a payment of the note itself, and the mortgage given to secure it is not thereby extinguished even though the note be returned to the maker; and, when a note thus pledged is returned to the maker on payment of the debt for which it has been used as collateral, he may reissue it and by so doing revive the mortgage by which it is secured. Citizens’ National Bank v. Loranger, 163 La. 868, 113 So. 129; Mente & Co. v. Levy, 160 La. 496, 107 So. 318; Levy v. Ford, 41 La. Ann. 873, 6 So. 671; Morris v. Cain, 39 La. Ann. 712, 1 So. 797, 2 So. 418; Succession of Phillips, 49 La. Ann. 1020, 22 So. 202.
 

 In the case 'at bar the very mortgage itself declared that the note secured thereby was issued for the express and sole purpose of being used as collateral security for loans made and to be made by the bank to the Amrhein Company, and the fact is that it was used for that and no other purpose. Hence it is clear that the payment of the loans made by the bank to the company was not a payment of the note used as collateral for said loans, and did not extinguish the mortgage by which said note was secured.
 

 IV■
 

 It is quite true that the mortgage note of- April 3, 1918, was as to said Amrhein individually only an accommodation note, since he individually was to receive no part of the loans for which it might be pledged, and it may be conceded that the note and mortgage, so far as he individually was concerned, was in effect a mere continuing guaranty towards the bank for loans to be made to the Amrhein Company.
 

 And it is also quite true that a con*
 
 *146
 
 turning guaranty expires at the death of the guarantor, unless the party guaranteed had no notice of the death. Menard v. Scudder, 7 La. Ann. 385, 56 Am. Dec. 610; 12 R. C. L. 1087, Verbo Guaranty, § 39.
 

 But we know of no principle of law, and can imagine none, by which the heirs or successors of the deceased guarantor may not for themselves extend such guaranty and waive the expiration thereof by the death of their ancestor.
 

 The question therefore is whether they have done so. We think they have.
 

 Certainly the widow, who had a half interest in the mortgaged property, and was undoubtedly liable upon the note to the extent of her interest in the community property,' had a right to bind herself and hex-property by reissuing the note and reviving the mortgage; and were she sole heir of her husband the question would end right here; for her act in reissuing the note was the act of her husband himself, to the extent of her interest in the property left by her husband.
 

 But we do not think she could thus bind her minor children and the property inherited by them. However we think the children have
 
 ratified
 
 hex- act since coming of age or being emancipated. For on October 25, 1923, when one of said children was of age and the other two dxxly emancipated, and when said note was about to prescribe and the bank was pressing its claims, demanding either that its claims be paid or that said note be extended, the widow and her three children, accompanied by their counsel, voluntarily acknowledged and promised to pay said note, and extended the payment thereof. It is clear that they all knew very well just what they were doing, and under what circumstances; for, as we have said, they were accompanied by counsel. And there is no suggestion, either here ox- when they were sued by the bank, that their act in acknowledging and renewing the note of April 3, 1918, was not entirely voluntary and done with full knowledge of all circumstances.
 

 V
 

 It will be observed that the note of April 3, 1917, was reissued and the reissuance ratified (October 25, 1923) long before the property was mortgaged to plaintiff (May 13, 1925).
 

 We are therefore of opinion that the bank’s mortgage, under which the property was sold, was in full force and effect when the property was sold, and that said mortgage primed the mortgage held by plaintiff; and, accordingly, we think the trial judge correctly rejected the demands of the plaintiff.
 

 Decree
 

 The judgment appealed from is therefore affirmed.
 

 THOMPSON, J., takes no part.