5 So.2d 138

**Succession of HOPE v. FIRST NAT. BANK & TRUST CO.**

No. 36095.

Nov. 3, 1941.

Rehearing Denied Dec. 1, 1941.

Blanchard, Goldstein, Walker & O'-Quin, of Shreveport, for Intervenor and appellant.

Harry V. Booth, of Shreveport, and Chas. C. Madison, of Kansas City, Mo., for the estate.

PONDER, Justice.

The First National Bank & Trust Company of Muskogee, Oklahoma, the plaintiff has intervened in the Succession Proceedings of Mrs. Eleanor M. Hope, deceased, seeking to recover on a guaranty claimed to have been given by the decedent for indebtedness due the bank by the George D. Hope Lumber Company.

The George D. Hope Lumber Company, a corporation domiciled at Belton, Missouri, transacted business with the intervenor bank over a long period of time until the company was finally liquidated

sometime in 1933. George D. Hope, who owned the controlling interest in the company, died sometime in 1916 leaving an estate including his interest in the company which was inherited by Mrs. Eleanor M. Hope. After the death of George D. Hope the company continued operations until it was liquidated under proceedings in the United States District Court for the Northern District of Oklahoma. The intervenor bank is the holder and owner of a note calling for $47,500, dated May 10, 1932, due June 9, 1932 and signed by the George D. Hope Lumber Company. The intervenor bank asserted its claim on this note in the receivership proceedings in the United States District Court as an ordinary creditor and received dividends which credited on the note reduced it to $34,895.92. On April 18, 1933 the intervenor bank brought suit in the Circuit Court of Jackson County, Missouri against Mrs. Eleanor M. Hope, deceased, for the balance due on this note on a guaranty dated May 20, 1931 signed by Mrs. Eleanor M. Hope which reads as follows:

"Whereas, The Geo. D. Hope Lumber Company of Muskogee, Oklahoma, a company incorporated under the laws of Missouri may apply from time to time to the First National Bank of Muskogee, Okla., for discounts.

"Now, for value received and in consideration of One Dollar paid to the undersigned, and other valuable consideration to them moving, Eleanor M. Hope, for herself, her heirs, executors and administrators, hereby guarantees to said bank, its successors or assigns, the prompt payment as they severally mature of all loans which have been or may be made to the said Geo. D. Hope Lumber Company by said bank, from time to time, as well as any renewals thereof, in an amount not to exceed $67,500.00 at any one time and also any other indebtedness that may become owing by said Company to said bank.

"Whenever such paper or any renewals thereof or other indebtedness shall become due and remain unpaid, the undersigned promises that they will on demand and without further notice of dishonor or of protest, pay the amount due thereon to said bank, its successors or assigns, and it shall not be necessary for said bank in order to enforce such payment, to first institute suit or exhaust its remedies against said Eleanor M. Hope or other parties liable on such paper, or for said indebtedness, but may proceed against either, all or any of the undersigned.

"But all paper discounted for said company and any indebtedness by it to said bank owing—when paid—shall be deemed to have been paid by said company, unless express notice in writing is given to said bank by said guarantors that it has been paid by them.

"This instrument of writing, is and shall be a running guaranty and agreement.

"Executed this 20th day of May 1931.
      "Eleanor M. Hope (Seal)"

The pertinent part of the intervenor bank's allegations in the suit in Jackson County, Missouri are as follows:

"That on the 20th day of May, 1931, the defendant, Eleanor M. Hope, in consideration of the sum of One Dollar ($1.00) to her, said defendant, paid by plaintiff, and in consideration that plaintiff should thereafter make loans to the Geo. D. Hope Lumber Company, a corporation of Missouri, did by an instrument and agreement in writing dated on the last mentioned date guaranty to plaintiff the present payment, as they should severally mature of all loans which might and should be made by plaintiff to said Geo. D. Hope Lumber Company and any renewals thereof, in an amount not to exceed Sixty-seven Thousand Five Hundred Dollars ($67,500.00) and that whenever such paper or any renewals thereof, or any other indebtedness, should become due and remain unpaid, said defendant promised and agreed she would on demand and without further notice of dishonor or of protest pay the amount due thereon to plaintiff; and that it should not be necessary for plaintiff in order to enforce such payment to first institute suit or exhaust its remedies against the parties liable on such paper, or for such indebtedness, but might proceed against the defendant, and the said written contract of guaranty by the defendant is filed with this petition.

"That on or about May 11, 1932, at Muskogee, Oklahoma, the Geo. D. Hope Lumber Company, a corporation, made, executed and delivered to plaintiff its promissory note whereby, for value received, it promised to pay to plaintiff the sum of Forty-seven Thousand Five Hundred Dollars ($47,500.00) on June 9, 1932, with interest from maturity at the rate of ten per cent (10%) per annum, which rate of interest is and was at all times herein mentioned legal under the laws of Oklahoma where said note was made and by its terms to be paid; and plaintiff did then and there loan to the said Geo. D. Hope Lumber Company the sum of money represented by the face of said note, to-wit: $47,500.00."

An attachment was issued in the suit in Missouri on the ground that Mrs. Hope was a nonresident of the State which was dissolved upon her appearance. She answered the suit denying the allegations of the suit on April 26, 1933. During the month of October 1935, no action having been taken in the case she filed an answer, the pertinent part of which reads as follows:

"For further answer and defense, defendant states that she was induced by false and fraudulent representations made by the plaintiff, its officers and agents, to execute an instrument in writing containing certain provisions as set forth in the plaintiff's petition, with the express understanding and agreement that the same would not be delivered or become effective as an obligation of the defendant.

"Defendant further avers that the said written instrument of guarantee, purporting to be a guarantee by the defendant of certain loans to be made by the plaintiff to the George D. Hope Lumber Company, was placed in the custody of H. H. Ogden, president of the plaintiff corporation, upon the assurance of said Ogden on behalf of

the said plaintiff, made both verbally and in writing, that the said guarantee would not be sued and that the defendant would be under no obligations on account of the execution thereof.

"Defendant avers that notwithstanding said assurances and agreements by and on behalf of said plaintiff, it has sought and by this action seeks to enforce the said pretended obligation in violation of the understanding and agreement between the parties and for the purpose of carrying out its fraudulent purposes and designs.

"Defendant further states that it was not the intention of the parties either by the terms of said instrument or otherwise, that defendant should guarantee payment of any existing indebtedness of the said George D. Hope Lumber Company to the plaintiff; that no credit was thereafter extended to said George D. Hope Lumber Company by the plaintiff on account of said guarantee and that the same was and is wholly without consideration and not binding upon the defendant."

The suit was still pending at the time Mrs. Hope died on August 12, 1939. It appears that counsel for Mrs. Hope endeavored to bring the case to trial at various times during the lifetime of Mrs. Hope and that the case was finally placed on the dead or delay docket prior to her death. This suit was pending more than six years before the death of Mrs. Hope without any serious attempt to prosecute it to judgment by the intervenor bank. After the death of Mrs. Hope the intervenor bank appeared in the succession proceedings asserting its claim under the guaranty, the pertinent part of its petition reads as follows:

"On the strength of the aforesaid guaranty and acting in reliance thereon, petitioner did thereafter make various loans to the aforesaid George D. Hope Lumber Company and on May 10th 1932 the indebtedness of the George D. Hope Lumber Company to petitioner amounted to Forty-seven Thousand Five Hundred ($47,500.00) Dollars represented by its promissory note of that date payable to the order of petitioner, which promissory note became due June 9th, 1932. The aforesaid note bears interest at the rate of ten per cent (10%) per annum from maturity until paid and contains a provision for the payment of attorney's fees in the amount of ten per cent (10%) of principal and interest of the aforesaid note if same should be placed in the hands of an attorney for collection or suit should be filed thereon."

Upon hearing of the intervention the intervenor bank produced testimony to the effect that Mrs. Hope had executed a $100,000 note sometime prior to the date of the guaranty to the George D. Hope Lumber Company to cover her indebtedness to the company caused by various withdrawals; that this note was pledged to the bank by the lumber company to secure $47,500 indebtedness represented by two notes calling for $37,500 and for $10,000 which were subsequently consolidated into a note calling for $47,500; that it was decided on account of the condition of the company that its capital

stock should be reduced $100,000; that an agreement was entered into whereby Mrs. Hope would substitute the guaranty involved herein in the place of the $100,000 and that the $100,000 note was released by the bank in order that the corporation could reduce the amount of its capital stock; that the capital stock was thereby reduced $100,000; the testimony for the bank explaining why the guaranty was given in an amount of $67,500 when the note only called for $47,500 was to the effect that a credit of $20,000 was to be extended; and that this credit was never extended.

The defendant in intervention objected to the testimony offered by the bank on the ground that it varied and contradicted its pleadings. This objection was overruled.

It was shown by the defendant that there was nothing in the records of the lumber company to show that it was ever the owner of the $100,000 note or that any such note ever existed. There is nothing in the records to show any authorization to pledge such note. The corporation records show that the capital stock of the corporation was reduced $100,000 on March 31, 1931, nearly two months before the guaranty was executed, which refutes the testimony offered by the plaintiff that the note was released at the time the guaranty was signed in order that the capital stock of the company might be reduced. The resolution of the company of that date reducing the capital stock shows that the diminution and reduction applied to all certificates of stock and not to the stock held by Mrs.

Hope alone. This would refute the idea that the reduction of the capital stock was brought about because of the indebtedness of Mrs. Hope to the company because in that event the other stockholders would not have to pay part of Mrs. Hope's indebtedness. There is nothing in the resolution to show that the reduction was brought about by the surrender of the $100,000 note. In fact, as previously stated, there is nothing anywhere in 'the records of the company to indicate that any such note ever existed.

The original ledger sheet of the bank of the account of George D. Hope Lumber Company shows that on October 16, 1930 a note of $37,500 was secured by a note signed by Mrs. Eleanor Hope calling for $100,000. The $37,500 note was renewed on January 15 and February 9, 1931, but the subsequent renewals of this note does not show that it was secured by any collateral. The original notes representing the renewals of this indebtedness do not show that they were secured by any collateral although there is a place on the notes to record securities. The only other record of the bank of the note is written on a collateral card but it does not indicate what it was intended to secure. No evidence was introduced from the bank's records to show any substitution of the guaranty for the $100,000 note. The only reference in the bank's records to any guaranty is on the ledger sheet of date May 10, 1932, wherein the $47,500 note is entered on the ledger sheet and on the collateral register card aforementioned. These two entries are both ir-

regular. The letters "Gty" written on the register card is in different colored ink. Moreover, there is nothing in the register card to indicate what it was given for. The only record of the bank that would indicate that the note involved herein was secured by a guaranty is irregular. The letters "Gty" are written on the ledger sheet in pencil when all other entries on the ledger sheet are in ink. The testimony produced by the plaintiff is evasive and contradictory. Considerable of the testimony is to statements made by Mrs. Hope, who is now deceased. Without going into a detail narration of the evidence it is sufficient to say that there are quite a number of circumstances that in a manner discredit the testimony produced by the plaintiff. The defendant contended that there was no consideration for the guaranty given. The trial court was of the opinion that the plaintiff had failed to prove a consideration and rejected the plaintiff's demands. The plaintiff has appealed.

From an examination of the record in this case and the various statements made by the trial court when he ruled on the admission of testimony to prove the consideration of the guaranty, it is apparent that the trial court was of the opinion that the consideration was not proved.

■ The contract of guaranty was executed in Oklahoma to be performed in Oklahoma. Under these circumstances the law of Oklahoma would govern.

It is conceded that the statutes of Oklahoma provides as follows:

Section 9600, Statutes of Oklahoma 1931, 15 Okl.St.Ann. § 321: "A guaranty is a promise to answer for the debt, default or miscarriage of another person."

Section 9602, Statutes of Oklahoma 1931, 15 Okl.St.Ann. § 323: "Where a guaranty is entered into at the same time with the original obligation, or with the acceptance of the latter by the guarantee, and forms, with that obligation, a part of the consideration to him, no other consideration need exist. In all other cases there must be a consideration distinct from that of the original obligation."

■ The record shows from sometime in 1931 to the liquidation of the company that the president of the intervenor bank was also a member of the board of directors of the lumber company, chairman of its executive committee and practically controlled the affairs of the company. He was also the personal trustee of Mrs. Eleanor M. Hope. He was unquestionably in possession of all the facts touching the guaranty. It is strange that the intervenor bank, of which he was president, appeared in the liquidation proceedings as an ordinary creditor on the note involved herein and received dividends which were credited on the note. While these liquidation proceedings were pending there were other liquidation proceedings instituted in the state court of Missouri and the bank appeared therein also asserting its claim on the note as an ordinary creditor. Shortly after the company was liq-

uidated, we find the bank suing Mrs. Hope on the guaranty claiming that it had loaned the money represented in the note to the lumber company on the faith of the guaranty subsequent to execution of the guaranty. The bank in the present suit in its pleadings alleges that the indebtedness represented in the note was advanced from time to time subsequent to the execution of the guaranty. While the pleadings of the bank in these various proceedings may not amount to an estoppel they certainly are evidence to be used in connection with the other evidence in this case. Farley v. Frost-Johnson Lumber Company, 133 La. 497, 63 So. 122, L.R.A.1915A, 200, Ann.Cas.1915C, 717.

■ The bank takes the position at this time that the guaranty was given in substitution of the $100,000 note and for renewal of the indebtedness. This is contrary to all of the bank's pleadings in this as well as the other proceedings. The consideration attempted to be proved is contrary to that alleged in the pleadings in all the proceedings. If these facts had only been alleged in one of the proceedings it might be justified as an error but when allegations of this nature have been made more than on one occasion any testimony to the contrary would have to be accepted with caution. Consideration also must be taken of the fact that although this claim had been asserted in Missouri more than six years before Mrs. Hope died there was no effort made to prosecute it to judgment. A stale claim long withheld from prosecution until the one against whom it was

preferred has died must be established with more than reasonable certainty. An unfavorable presumption is created by the delay and it can be removed only by peculiarly strong and exceptionally conclusive testimony. Wood v. Egan, 39 La. Ann. 684, 2 So. 191; Kuhn v. Bercher, 114 La. 602, 38 So. 468.

■ The documentary evidence in this case refutes the testimony produced by the bank. It is not reasonable to believe that a transaction of this magnitude, involving a $100,000 note claimed to have been an asset of the corporation, would not have been mentioned somewhere in the records or books of the corporation. The only mention of the guaranty in the records of the bank in connection with the note is irregular in that it shows it was entered subsequently to the entry of the note. The testimony produced by the plaintiff is of an unsatisfactory character, because it is contradictory and evasive. There are many circumstances brought out in the cross examination of the witnesses that in a measure discredits the testimony. There is considerable testimony produced by the defendant which tends to destroy the testimony produced by the plaintiff.

■ The guaranty begins with stating, "Whereas, The Geo. D. Hope Lumber Company of Muskogee, Oklahoma, a company incorporated under the laws of Missouri may apply from time to time to the First National Bank of Muskogee, Okla., for discounts." This in our opinion contemplates future advances. While it is true the guaranty is drawn in the

general form thereafter yet this first paragraph beginning with "Whereas" shows the purpose for which it was executed.

Under the circumstances in this case we are of the opinion that the plaintiff has failed to prove its case with reasonable certainty. Moreover, owing to the nature of the testimony the trial judge is in a better position to weigh it because he has opportunity to observe the demeanor of the witnesses and the manner in which they give their testimony. We are loath to disturb the finding of a trial judge on questions of fact unless it is shown that his findings thereon are manifestly erroneous. We are not prepared to say that the finding of fact by the trial judge is erroneous in this case.

.For the reasons assigned, the judgment is affirmed at appellant's cost.

O'NIELL, C. J., dissents.