**William Latham LEEDS, Independent Executor of the Estate of John R. Neece, Deceased, Appellant,**

v.

**WHITNEY NATIONAL BANK OF NEW ORLEANS, Appellee.**

**No. 22820.**

United States Court of Appeals Fifth Circuit.

March 9, 1967.

Rehearing Denied April 4, 1967.

 

such indebtedness precisely as if same had been contracted and was due and owing by the undersigned in person, and the undersigned hereby agrees and binds himself, his heirs and assigns, by all of the terms and conditions contained in any note or notes or other obligation or obligations signed or to be signed by said Debtor, the undersigned hereby making himself a party thereto; * * * The Bank may extend any note or other obligation of the Debtor one or more times and * * * the undersigned shall remain at all times bound hereby, notwithstanding any such extensions and/or surrender * * *."

Otis B. Gary, Johnson, Bromberg, Leeds & Riggs, and Donald J. Lucas, Dallas, Tex., for appellant.

John A. Pace, Edward Kliewer, Jr., Dallas, Tex., for appellee.

Before JONES and COLEMAN, Circuit Judges, and JOHNSON, District Judge.

JONES, Circuit Judge:

On September 12, 1961, John R. Neece executed and delivered to the Whitney National Bank of New Orleans a continuing guaranty in the amount of $29,680.36 of any indebtedness of General Flooring Company to the Bank. The Bank took other like guaranties and these, with the Neece guaranty, were of an aggregate amount of $1,000,000. The guaranties were rather lengthy documents which, in part, provided:

"[T]he payment [is guaranteed] up to the full sum of $29,680.36, of any indebtedness, direct or contingent, of said Debtor [General Flooring] to said bank, including, but without limitation, all interest, fees and charges of whatsoever nature and kind, whether due or to become due and whether now existing or hereafter arising; and the undersigned hereby binds and obligates himself, his heirs, executors, administrators and assigns, in solido with said Debtor for the payment, up to the aforesaid sum of $29,680.36, of any

Advances of $1,250,000 were made from time to time by the Bank to General Flooring. Neece died on June 17, 1962. The Bank did not learn of his death until August 24, 1962. At the time of his death General Flooring was indebted to the Bank in the amount of $590,519.43, evidenced by seven promissory notes. After Neece died the Bank made additional advances to General Flooring, but for these loans no liability of the Neece estate is asserted. All of the notes outstanding and unpaid at the time of the death of Neece were thereafter renewed or replaced with new notes. It was stipulated that as of December 18, 1964, General Flooring was indebted to the Bank in the amount of $541,363.25, of which $404,437.59 was owing upon the indebtedness existing at the time of the death of Neece.

The Bank brought suit against the executor of Neece on the guaranty in the United States District Court for the Northern District of Texas. Jurisdiction was based upon diversity of citizenship. The executor asserted, as an affirmative defense, that renewals and extensions of maturities released the guarantor and the Neece estate had no liability for the payment of any part of the obligations of the borrower to the Bank. The district court held that the instrument was a continuing guaranty which was not revoked by the death of Neece, the guarantor, and that liability on the guaranty was not

**502**

released by the execution of the renewal notes by General Flooring. The continuing guaranty, said the district court, was a guaranty of the indebtedness of the borrower to the Bank. Judgment for the Bank against the executor of Neece in the amount of $29,680.36 was entered. From the judgment the executor has appealed.

 Although the appellant, in his initial brief, cited Texas as well as Louisiana authorities to support his contentions, he has agreed with the appellee that Louisiana is to supply the law by which the issue is to be decided. This seems to be the universal rule. Hope v. First National Bank & Trust Co., 198 La. 878, 5 So.2d 138; 38 C.J.S. Guaranty § 3, at 1132. The question, as we see it, is whether the executor of the guarantor was released from liability upon the guaranty by the renewal of promissory notes after the creditor had knowledge of the death of the guarantor.[1] The resolution of the issue requires a construction of the agreement.

The language used in the agreement, which is designated by the parties as a continuing guaranty, clearly shows that it is the indebtedness to the Bank which Neece guaranteed would be paid rather than any note or notes by which such indebtedness might be evidenced. The giving or renewing of notes as evidence of an indebtedness covered by a continuing guaranty does not work a novation so as to discharge the guarantor. Interstate Trust & Banking Co. v. Sabatier, 189 La. 199, 179 So. 80; Lee Tire & Rubber Co. v. Frederick-Planche Motor Co., La. App., 180 So. 143.

It is a general rule and the law of Louisiana that a continuing guaranty is terminated as to future transactions by the death of the guarantor of which the creditor has knowledge. Interstate Electric Co. v. Tucker, 197 La. 660, 2 So.2d 56; Buckeye Cotton Oil Co. v. Amrhein, 168 La. 139, 121 So. 602; 38 C.J.S. Guar-

anty § 37, at 1175. The giving of renewal notes, payable on demand, did not extend the time of payment nor change the amount or character of the indebtedness which was guaranteed by the guarantor at the time of his death. Interstate Trust & Banking Co. v. Sabatier, supra. Therefore, the estate of the guarantor remains liable for the indebtedness of the borrower to the Bank to the extent of the guaranty.

The judgment of the district court is Affirmed.

---

[1] It is not necessary that we here decide whether the contract is one of guaranty or one of suretyship as a result of the provisions binding Neece for the indebtedness "precisely as if it had been contracted by him," and by the terms "contained in any note or notes * * * signed or to be signed" by General Flooring.