**In re ESTATE OF Sam STALCUP, Deceased.**

Court of Appeals of Tennessee, Eastern Section.

July 2, 1981.

Application for Permission to Appeal Denied by Supreme Court Feb. 1, 1982.

Ward S. Whelchel, Knoxville, for appellant.

Wallace T. Keller and Edward G. Markey of Meier & Keller, Euless, Tex., Gary R. Wade of Ogle & Wade, Sevierville, for appellee.

## OPINION

PARROTT, Presiding Judge.

Ella Stalcup, Executrix of the Estate of Sam S. Stalcup, appeals from the trial court's ruling the estate is responsible for the principal amount, accrued interest, and attorney fees related to six promissory notes and guaranties that were executed by the deceased with the First National Bank of Euless, Texas.

It is agreed that Texas law is applicable to this case. During the early and mid-70's Sam Stalcup, deceased, entered into several business transactions in the Dallas, Texas, area. Stalcup became a business associate with Jerry D. Reid and John W. Wade. Around July 24, 1975, these three men entered into a partnership, "Wade, Reid, Stalcup Company," which operated several McDonald's Restaurants around Dallas. These men also formed a corporation, "Daddy$ Money, Inc.," which operated restaurants in Dallas, Texas, Houston, Texas, and Atlanta, Georgia. To help finance these operations, Stalcup, individually and in association with Reid and Wade, borrowed funds from the First National Bank of Euless, Texas. In late 1978, Mr. Stalcup returned to Sevier County, Tennessee. Appellant alleges Stalcup was incapacitated due to illness in January of 1979 until his death on March 14, 1979.

The Bank brought suit against his estate to collect on the various notes and guaranties it held that involved the deceased. On April 11, 1980, the trial court ruled the claim of the Bank was valid in all respects and awarded a judgment against the estate for $425,333.61 which represents the principal amounts and accrued interest on the six notes or guaranties plus reasonable attorney fees.

Stalcup owed $86,000.00 in principal and $18,363.68 in accrued interest on a note he signed individually, which was secured by a deed of trust covering certain land in Dallas County, Texas. After default on the note, the Bank acquired that property at a foreclosure sale for $65,000.00, which was credited to Stalcup's account. The property was subsequently sold to a third party by the bank for $107,000.00, but no credit was given Stalcup for this $42,000.00 profit from the resale. Appellant contends the Bank should be required to apply to the original debt deficiency the surplus $42,000.00 it received from the resale of that property used to secure the original debt, which property the Bank had purchased at the foreclosure sale. Appellant's only authority for this proposition is that it is required by principals of equity.

The Texas rule is clear that once a holder of a note secured by a trust deed establishes a case for a deficiency judgment by introducing the note and credits from a foreclosure sale, the burden of proving a reason to deny recovery of that deficiency shifts to the grantor of the trust deed. *Tarrant Savings Association v. Lucky Homes, Inc.*, 390 S.W.2d 473, 474 (Tex.1965). If there is an invalid foreclosure sale under a deed of trust and the property is wrongfully resold to another party, in a suit to recover a deficiency judgment on the original obligation, the mortgagor should be given credit for the reasonable market value of his equity in that property. *Crow v. Heath*, 516 S.W.2d 225 (Tex.Civ.App.1974); *Maupin v. Chaney*, 139 Tex. 426, 163 S.W.2d 380 (1942). However, generally inadequacy of consideration alone does not render a foreclosure sale void, absent evidence of irregu-

larities in connection with that sale. *Flato Brothers, Inc. v. Builders Loan Co. of Dallas,* 457 S.W.2d 154, 158 (Tex.Civ.App.1970); *Tarrant, supra.* Furthermore Texas law is clear that a mortgagee may purchase at his own public foreclosure sale. *See* cases cited in 28 Texas Digest, *Mortgages* § 362. Absent evidence of irregularities in the foreclosure sale, there is no merit to a debtor's complaint that had the mortgagee bid an adequate price at the foreclosure sale the full amount due on the note would have been covered and there would be no deficiency. *Flato Brothers, Inc., supra* at 158. Since appellant fails to cite any irregularities that would be sufficient to invalidate the foreclosure sale, the bank would not be required to apply their profit from the resale of the property to the Stalcup deficiency.

■ On February 28, 1979, John W. Wade, purportedly for the partnership, executed a note which has a balance of $8,548.00 and accrued interest of $686.08. In its loan file the Bank has a copy of the Wade, Reid, Stalcup Company's Partnership Agreement which provides in Section VIII(b) that "no partner shall, without consent of all the partners, do any of the following: ... (7) Borrow money in the name of the partnership or use as collateral any partnership property; ..." Appellant contends that, since the Bank had knowledge of this unanimous consent requirement, the estate is not bound because the Bank had knowledge that Wade was not making an authorized obligation of the partnership when he alone signed the instrument. The Texas Uniform Partnership Act, Tex.Rev.Civ.Stat.Ann. Art. 6132b § 9, provides:

> (1) Every partner is an agent of the partnership for the purpose of its business, and the act of every partner, including the execution in the partnership name of any instrument, for apparently carrying on in the usual way the business of the partnership of which he is a member binds the partnership, unless the partner so acting has in fact no authority to act for the partnership in the particular mat-

ter, and the person with whom he is dealing has knowledge of the fact that he has no such authority.

The Bank was aware of a partnership resolution that provided for each partner to be authorized to individually execute all documentation necessary to pledge partnership assets as a continuing surety for all indebtedness of Daddy$ Money, Inc. to the Bank. Notably there is no evidence establishing that Wade failed to have the consent of the other partners in executing this note. The partnership agreement does not specifically require all partners to have given written consent nor for all partners to sign any instrument the partnership wishes to execute in order for it to be valid. Therefore, the Bank would not have known that Wade was acting outside his authority, if indeed he was.

■ The Bank claimed the estate was liable for a total of $15,309.33 for principal, accrued interest, and attorney fees upon a series of notes that were made by Wade, Reid and Stalcup as individuals and culminated with a renewal note dated January 10, 1979. Appellant contends that the final note of that series does not bind the estate because Stalcup's signature does not appear anywhere on that instrument. Appellant argues that this note is the individual debt of Wade and Reid and not partnership indebtedness because there is no notation that these signatures were in a representative capacity for the partnership. Although the Bank did not stamp "renewed" on the January 10, 1979, note, the bank president testified to the effect that and the note contains a notation indicating that it is a renewal of note # 12300, which was signed by Stalcup and the others as individuals on December 15, 1975, and became due on December, 1978. The December, 1975 note contained the following provisions:

> The makers, sureties, guarantors and endorsers of this note and all other parties hereto (herein called the undersigned) ... agree to all extensions or partial payments with or without notice before or after maturity ...

We and each of us (including guarantors and endorsers) agree that in case of renewals or extensions of maturity of this note, any and all security interest given the payee by us or any of us at any time shall remain in full force and effect as security for the payment of the renewed or extended note.

Under Texas law a person who is either primarily liable for or surety on a note is not discharged by an extension of the note without his consent when the note specifically provides that it may be extended without notice. *Clark v. Bank of the Southwest, Amarillo*, 410 S.W.2d 191, 193 (Tex. Civ.App.1966), and cases cited therein. Therefore, the trial court was correct in finding the estate liable for this renewal note.

 On February 6, 1976, and September 3, 1976, Stalcup as an individual executed with the Bank guaranties with each providing:

This is a continuing Guaranty, and shall apply to and cover all indebtedness and renewals thereof without regard to form or amount which Borrower may incur, create, renew, extend or alter, in whole or in part, without notice to Guarantor.

. . . .

In the event of the death of any Guarantor hereunder, the obligation of the deceased shall continue in full force and effect against his estate as to all indebtedness which shall have been created or incurred by the Borrower prior to the time when the Bank shall have received notice, in writing, of such death; ...

Appellant contends that Stalcup's incapacity and death terminated these continuing guaranties and that subsequent renewal of Daddy$ Money, Inc.'s notes released the estate from liability. While written notice to the creditor of revocation of a continuing guaranty is effective as to subsequent loans, the revocation is not effective as to renewals of existing obligations when the guaranty agreement expressly covers renewals and extensions made by the borrower, even without notice to the guarantor. *Dicker v. Lomas & Nettleton Financial Corp.*, 576 S.W.2d 672, 676 (Tex.Civ.App. 1978). Similarly, death of the guarantor of which the creditor has notice terminates a continuing guaranty as to future obligations. Likewise when, as in this case, the provisions of the deceased's continuing guaranty covered renewals and extensions, renewals of obligations existing at the time of the guarantor's death do not discharge his estate from liability. *Leeds v. Whitney National Bank of New Orleans*, 374 F.2d 500, 502 (5th Cir. 1967). Therefore, Stalcup's estate was liable as guarantor on Daddy$ Money, Inc.'s $269,847.62 indebtedness to the Bank.

Appellant further contends that under Texas Rule of Civil Procedure 31 the estate, as surety of Daddy$ Money, Inc.'s obligations, cannot be sued unless the principal is joined with it. However, since parties to a lawsuit is a matter of procedural, not substantive, law the procedural law of Tennessee the forum state applied. 16 Am.Jur.2d, *Conflict of Laws* § 122; 15A C.J.S., *Conflict of Laws* § 22(4). Tennessee does not have this joinder requirement. Therefore, appellant's claim is without merit.

Let the judgment of the trial court be affirmed. All costs of this action are to be taxed to appellant.

FRANKS, J., concurs.

C. S. CARNEY, Jr., Special Judge, not participating.