BROWN, Judge.
On May 27, 1986, W. Carey Pearson, acting on behalf of Pipe Sales of Shreveport, Inc. (Pipe Sales), executed two promissory notes payable to the order of Commercial National Bank in Shreveport (CNB). One note in the amount of $109,-305.61 was due and payable in one installment on July 21, 1986 and a second note in the amount of $210,649.71 was likewise payable in one installment on August 11, 1986. CNB filed this action on July 28, 1988 to collect these two notes against Pipe Sales. Because of the execution of instruments styled “Continuing Guaranty”, W. Carey Pearson, Kenneth M. Byram, Ann Ryan Palmer and Steven Palmer were named as additional defendants. The trial court granted a motion for summary judgment in favor of CNB against all defendants except Pearson who had filed and obtained Chapter 7 bankruptcy relief. By-ram and the Palmers have appealed. Determining that summary judgment was not appropriate, we reverse.
FACTS
On August 8, 1983 Byram and George C. Palmer signed separate but identical documents labeled “Continuing Guaranty” in favor of CNB for the debts of Pipe Sales which were limited to the principal amount of $250,000 and any additional interest, fees and charges that may be due. Pipe Sales furnished CNB a corporate resolution dated August 17, 1983 authorizing either W. Carey Pearson or George C. Palmer to borrow money from CNB and execute promissory notes on behalf of the corporation. On March 26, 1985, George C. Palmer died with three-fourths of his estate being inherited by his widow, Ann, and one-fourth by his son, Steven. Ann and Steven Palmer were made defendants in this action due to their unconditional acceptance of Palmer’s succession.
CNB’s submissions in support of its request for summary judgment were the two notes, continuing guaranties, corporate resolution authorizing Pearson to borrow for the corporation, the filings and judgment of possession in Palmer’s succession and an affidavit by CNB’s Assistant Vice-President outlining the status of the notes.
In opposition to CNB’s motion, the Palm-ers’ offerings showed that the bank had immediate knowledge of the death of George C. Palmer and that his heirs did not know of the continuing guaranty. In affidavits from Ann and Steven Palmer the initial debt of Pipe Sales was alleged to have been contracted before Mr. Palmer’s death and evidenced by two notes with fixed maturity dates of August 12, 1985 and October 21, 1985. The affidavits state that after Mr. Palmer’s death these maturity dates were extended several times by renewal notes without notice to either Ann or Steven Palmer. The two notes involved in this action represented the final extension of the due date. CNB, however, presented no background information concerning the two notes involved in this action. CNB based its motion entirely on the nonpayment of the two notes executed fourteen months after Mr. Palmer’s death.
*132 Byram filed an affidavit in opposition to CNB’s motion asserting error and fraud when he signed the guaranty. He further alleged that Pipe Sales never authorized Pearson to borrow money or execute the two promissory notes.
DISCUSSION
CNB’s motion for summary judgment relies on the language in the continuing guaranties signed by George C. Palmer and Byram. The guaranties provided for in solido liability with the principal, Pipe Sales, and allowed extensions of the obligation without notice or consent of the guarantor. The instrument recited that the guarantor bound “myself, my heirs and assigns.”
The jurisprudence has consistently considered a continuing guaranty contract to be equivalent to a contract of suretyship. First National Bank of Crowley v. Green Garden Processing Company, Inc., 387 So.2d 1070 (La.1980). The traditional civil law concept of suretyship creates a liability accessory to that of the principal debtor. LSA-C.C. Art. 3035 defines suretyship as an accessory contract to fulfill the obligation of another who has failed to perform. See 6 S. Litvinoff, Louisiana Civil Law Treatise, “Obligations”, § 111 at 195 (1969). Because of the nature of the surety’s obligation the Civil Code affords certain rights and defenses. LSA-C.C. Arts. 3035-70. One such defense is that a surety is fully discharged when a creditor extends the term of the debt without the surety’s consent. LSA-C.C. Art. 3063 (repealed as of January 1, 1988).
In the instant case CNB. employed “boilerplate” language binding the guarantors in solido with the principal debtor. CNB argues that this language in the guaranty contract changed the nature of the obligation from suretyship to that of principal co-obligors. First National Bank of Crowley v. Green Garden Processing Company, Inc., supra; Louisiana Bank & Trust Company, Crowley v. Boutte, 309 So.2d 274 (La.1975); LSA-C.C. Art. 3045 (amended Acts 1987, No. 409 § 1 effective January 1, 1988).
Because it is an accessory obligation, suretyship provides benefits and defenses to guarantors not available to solidary obli-gors. The instant case illustrates the precarious position of a guarantor who signs “boilerplate” contracts of suretyship. Although undertaking what he believes to be an accessory obligation, the guarantor in certain respects becomes a primary obligor and loses some of the defenses available to sureties. The problem faced by this court is the extent to which these sureties have waived the benefits of their accessory status by being bound in solido.
Regardless of the confusion created by applying the rules of solidarity to the surety’s obligation, the general rules of contractual interpretation are applicable. LSA-C.C. Art. 2056 requires that any ambiguity in a contract must be interpreted against the drafter. In this case the continuing guaranties were drafted by CNB, and if not clear must be interpreted in defendants’ favor.
EFFECT OF THE DEATH OF GEORGE C. PALMER
A continuing guaranty is terminated as to future transactions by the death of the guarantor of which the creditor has knowledge. Interstate Electric Company v. Tucker, 197 La. 660, 2 So.2d 56 (La.1941); Leeds v. Whitney National Bank of New Orleans, 374 F.2d 500 (5th Cir.1967). See also LSA-C.C. Art. 3061 which became effective January 1, 1988 and provided that knowledge of the death of a surety has the same effect on a creditor as would a notice of termination received from the surety. The comments to Art. 3061 state that it simply codified a principle recognized in the jurisprudence.
CNB’s argument that the language “I hereby bind myself, my heirs, and assigns” was a waiver of this general rule of law has no merit. This language is ambiguous as to the effect on future transactions after the death of the guarantor. The same “boilerplate” language was used in the guaranty in Leeds, supra. Leeds found that this language did not waive the gener *133 al rule of law that the death of a guarantor ends the guaranty for future transactions. Further, LSA-C.C. Art. 3063 in effect at the time of this transaction provided:
The prolongation of the terms granted to the principal debtor without the consent of the surety, operates a discharge of the latter.
The guaranty contract’s provision that the bank “may extend any obligation of the debtor one or more times ... without notice or consent” does not clearly apply to future transactions occurring after the guarantor’s death. Renewal notes that extend the time of payment or change the amount or character of the indebtedness which was guaranteed at the time of death operate to discharge the heirs of the surety. Leeds, supra.
The burden of proof in a motion for summary judgment is on the mover to establish that there are no genuine issues of material fact. Any doubt should be resolved in favor of a trial on the merits. Swindle v. Haughton Wood Company, Inc., 458 So.2d 992 (La.App. 2d Cir.1984). Accordingly, the record does not support CNB’s summary judgment against Palmer’s heirs as real issues of fact and law exist.
BYRAM’S DEFENSES
Byram presents other issues for this court to explore. Byram states that Pearson did not have the authority to act for Pipe Sales. Byram’s affidavit claims that Pipe Sales never elected a board of directors and thus never authorized Pearson to incur any debt. Byram contends the corporate resolution proffered by CNB is not of itself a conclusive piece of evidence as the resolution does not prove that Pipe Sales is indeed a corporation or that Pearson was an officer of that corporation. By-ram alleges that since the debt was not validly contracted then the guarantor owed nothing. Finally, Byram argues he did not freely give his consent in executing the guaranty because of error and fraud.
By affidavit Byram submits that Pearson promised to issue him stock in return for signing the guaranty. Byram argues he would not have signed the guaranty had he known Pearson would fail to issue the promised stock and that this misrepresentation by Pearson was fraud. By-ram in brief attempts to connect this to CNB through LSA-C.C. Art. 1956 which provides that fraud committed by a third person vitiates consent if the other party knew or should have known of the fraud and argues CNB knew of the fraud committed by Pearson. Byram’s filings, however, do not reference any knowledge by CNB of Pearson’s alleged misrepresentations. Only in brief before this court does Byram argue that CNB knew or should have known of the error in consent or fraud. Under these circumstances, as to the issue of fraud or error, Byram has failed to demonstrate a genuine issue of fact. American Bank v. Saxena, 553 So.2d 836 (La.1989).
The guaranty contract signed by Byram waived objections to the extension or renewal of the debt. Louisiana National Leasing Corporation v. Family Pools, Inc., 345 So.2d 480 (La.1977). As a solidary obligor, however, Byram can raise against the creditor defenses that arise from the nature of the obligation or that are common to all the solidary obligors. He may not raise a defense that is merely personal to the co-obligor. LSA-C.C. Art. 1801. Byram guaranteed the debt of Pipe Sales and if no such debt was legitimately contracted then he has a defense resulting from the nature of the obligation. In his affidavit opposing summary judgment By-ram specifically states that Pearson lacked authority to obligate Pipe Sales. Thus, under the principals governing summary judgment a material issue of fact existed.
DECREE
Due to the foregoing reasons this case is hereby REVERSED and REMANDED at plaintiff’s cost.
REVERSED and REMANDED.