McDONALD, J.
*940 The 16-year-old juvenile defendant, R.K., was alleged to be delinquent under petition number 110,529, filed by the State on November 1, 2016, pursuant to the Louisiana Children's Code.[2] The petition was based upon the defendant's alleged commission of the following offenses against his nephew: obscenity, a violation of LSA-R.S. 14:106 (count one); first degree rape, a violation of LSA-R.S. 14:42A(4) (count two); and indecent behavior with juveniles, a violation of LSA-R.S. 14:81A(1) (count three). The defendant initially denied the allegations, and the matter was set for adjudication. After the State rested, the defendant moved for a directed verdict of acquittal, which the juvenile court granted as to count one and ordered that the petition be dismissed as to count one. Thereafter, pursuant to a plea agreement, the defendant withdrew his denial to the allegations of the petition, entered an admission, and the court adjudicated him delinquent as to sexual battery on count two and indecent behavior with a juvenile on count three.
At the disposition hearing, the juvenile court committed the defendant to the custody of the Office of Juvenile Justice (OJJ), a division of the Department of Public Safety and Corrections, until his 21st birthday. The court suspended that disposition and placed the defendant on supervised probation for two years. In addition to other conditions of probation, the court also ordered the defendant to complete 50 hours of community service, cooperate with sex offender treatment, pay court costs, have no contact with the victim, and have no unsupervised contact with children under 10 years old. On appeal, the State contends that the disposition imposed by the court is illegally lenient. For the following reasons, we affirm the defendant's adjudications of delinquency and disposition.
FACTS
The adjudication hearing was not made part of the appellate record. According to the petition and predisposition report, the victim's parents reported the defendant to the East Baton Rouge Sheriff's Office after the victim disclosed multiple incidents of sexual misconduct by the defendant occurring between January 1, 2015 and July 31, 2016. Specifically, the predisposition report states that, during a forensic interview at the Children's Advocacy Center, the victim disclosed that the defendant taught the victim how to masturbate, grabbed the victim's penis underneath his clothing, anally penetrated the victim, and forced the victim to watch him masturbate.
DISPOSITION
In its sole assignment of error, the State contends that the disposition imposed by the juvenile court was illegally lenient. The State argues that the court failed to consider the best interest of the victim and society and failed to address the defendant's full rehabilitative needs.
After adjudicating a child to be delinquent, a court should impose the "least restrictive disposition" authorized by *941 LSA-Ch.C. arts. 897 through 900,[3] which the court finds is consistent with the circumstances of the case, the needs of the child, and the best interest of society. LSA-Ch.C. art. 901B. Further, LSA-Ch.C. art. 901A provides, "In considering dispositional options, the court shall not remove a child from the custody of his parents unless his welfare or the safety and protection of the public cannot, in the opinion of the court, be adequately safeguarded without such removal."
Louisiana Children's Code article 897A provides:
A. After adjudication of any felony-grade delinquent act other than those described in Article 897.1,[4 ] the court may:
(1) Reprimand and warn the child and release him into the custody of his parents either unconditionally or subject to such terms and conditions as deemed in the best interests of the child and the public.
(2) Reprimand and warn the child and release him into the custody of some other suitable person either unconditionally or subject to such terms and conditions as deemed in the best interests of the child and the public. The court shall, whenever practicable, select a person of the same religious faith as the child or his parents.
(3) Place the child on probation in the custody of his parents or other suitable person.
Commitment of the child to the custody of the Department of Public Safety and Corrections may be appropriate under any of the following circumstances: (1) there is an undue risk that during the period of a suspended commitment or probation that the child will commit another crime; (2) the child is in need of correctional treatment or a custodial environment that can be provided most effectively by his commitment; (3) a lesser disposition will deprecate the seriousness of the child's delinquent act; and (4) the delinquent act involved the illegal carrying, use, or possession of a firearm. LSA-Ch.C. art. 901C; State in Interest of J.W. , 95-1131 (La. App. 1 Cir. 2/23/96), 669 So.2d 584, 586.
In determining a proper disposition, the court shall receive all evidence helpful in determining the issue, including oral and written reports, the predisposition report, any mental evaluation reports, and all other evidence offered by the child or the State. LSA-Ch.C. art. 893B. The court may rely on this evidence to the extent of its probative value even though not admissible at the adjudication hearing. Id. Counsel for the parties shall be afforded the opportunity to present evidence and to examine and controvert written reports so received and to cross examine individuals preparing the reports. LSA-Ch.C. art. 893C.
At the disposition hearing, the State introduced a predisposition report prepared by the defendant's probation officer. In the report, the probation officer noted that the *942 defendant did not accept responsibility for the offenses and did not show remorse. She also noted that his parents did not believe their son was guilty of the offenses, did not hold him accountable for the charges, and felt their family was being held captive by the conditions of release imposed on their son. Noting that this behavior would continue and the victim's family believed defendant would not receive the help needed if he remained in his parents' home, the probation officer recommended that he be committed to the OJJ until his 21st birthday. In an addendum to her report, the probation officer noted that the defendant had not committed any further delinquent acts, had refrained from using illegal drugs, and had no disciplinary issues at school. She also reported that, according to his parents, he had followed all rules in his home and had abided by his curfew.
The State also introduced a copy of a psychosexual evaluation completed by clinical psychologist Dr. Brandon Romano and an addendum to his evaluation. Dr. Romano also recommended that the defendant be considered for placement with the OJJ and participate in either a residential treatment program for youth with sexual behavior problems or the Juvenile Understanding and Managing Problematic Behavior Program (JUMP). In a report addendum, Dr. Romano clarified that, although the offense record provided to him incorrectly stated that the defendant was adjudicated delinquent for second degree rape, the defendant's estimated risk did not change even though he was actually adjudicated for a lesser offense. Dr. Romano concluded that the "heterogeneity of the victims, duration of the offenses(s), and diversity of offending behaviors - among other risk factors - suggests [the defendant] would be better served in a residential therapeutic setting for youth with sexual behavior problems."[5] He further stated that JUMP should only be considered if the defendant did not meet admission criteria for a residential setting. Finally, the State introduced a victim impact statement, including a letter to the juvenile court from the victim's mother. The victim's mother expressed concern that the defendant would not receive the appropriate help if he remained in his parents' home. The State also attempted to introduce a video of the victim's Child Advocacy Center interview, but the court sustained the defendant's objection to the introduction of the video. The State proffered the video into evidence and asked the court to commit the defendant to the OJJ, noting that he had not accepted responsibility. The State pointed out that the defendant stated that he only accepted the plea bargain for his family, because if he were not adjudicated delinquent, the victim in petition number 110,528 would have committed suicide.
The defendant's counsel asked for probation and noted that the alleged probation violations were "born of inaccurate and misconstrued statements." His counsel also complained that there were numerous hearsay allegations about the defendant and his family that "tainted" Dr. Romano's understanding of the case.
The juvenile court explained that it was "restrained" by the directives of the legislature to consider the least restrictive option for the defendant and could only commit him to custody for "extreme circumstances." The court further noted that it heard the evidence and reviewed the victim impact statement. The court pointed out that it believed the victim and would *943 have adjudicated the defendant delinquent had he not entered a plea. The court then stated that the law and circumstances of the case required it to allow the defendant to seek rehabilitation in his community. The court instructed the defendant that he was "on edge" and stated, "[t]he only reason that [the defendant is] not going into State's custody is because [the court] feel[s] that when you are on the edge, ... the law tells [the court] that it has to go this way. I will also tell you[,] were this to have happened in district court, and I were a district court judge, you could have gone to jail for a very long time." The court committed the defendant to the OJJ until his 21st birthday, suspended that disposition, and ordered the defendant to participate in supervised probation for two years.[6]
The State filed a motion to reconsider the disposition, and the juvenile court held a hearing on the motion. At the hearing, the defendant's counsel argued that the Dr. Romano's recommendations and the defendant's probation officer's recommendations were "full of errors as to the charges, full of errors as to the statements made by not only [the defendant], but also [by the defendant's] family[.]" Specifically, as outlined in his disposition memorandum, the defendant had argued that his probation officer's predisposition report contained "numerous, new allegations" regarding the defendant and his immediate family, several of which were "criminal and/or delinquent in nature." The defendant also argued that the report incorrectly alleged that he violated his release by traveling, when he actually received permission from his former probation officer to travel. Although later amended, the report originally incorrectly stated that the defendant was adjudicated delinquent on one count of second degree rape. The defendant complained that Dr. Romano's report misconstrued many of his statements during his interview and erroneously stated that the defendant was adjudicated for second degree rape. However, as noted above, in his report addendum, Dr. Romano clarified that the incorrect adjudication information did not affect his recommendation.
The juvenile court responded that the case was "close" and the balance had to "weigh towards the ... less restrictive option." Thereafter, the court denied the State's motion, explaining:
I think I'm bound by the [tenets] of the Children's Code to consider all the factors and then to place a juvenile defendant in a least restrictive[,] most appropriate - I will say, I think as I said before, that this was not an easy decision for [t]he Court. It was close. And I think when it is close ... [t]he Court feels ... that that balance has to weigh towards the least - towards the less restrictive option. I understand the position of the State; I'm very sympathetic to the position of the State. I'm very sympathetic towards the position of the [victim], but I have to recognize that the goal... [what] will ultimately happen is that this youth is going to be returned to the community .... All the studies, all the research - [e]verything says that outcomes are generally better without commitment. That that's what we have to try first.... So, [t]he Court did reconsider its sentence. I went back over, certainly within my head, and reread the *944 State's motion and considered the evidence that was presented[,] as well as the predisposition report[,] to determine whether or not [t]he Court did make an error, [because] that would not be the first time that [t]he Court made an error. In doing so, I have the same reservations, but I believe I still have to come to the same outcome. So, I'm going to deny the State's motion. The sentence will stand as imposed.
A juvenile court is given wide discretion in imposing a disposition within statutory limits, and its disposition should not be set aside unless the court manifestly abuses that discretion. State in Interest of C.T. , 15-1864 (La. App. 1 Cir. 4/15/16), 195 So.3d 70, 76, affirmed , 16-0939 (La. 10/18/17), 236 So.3d 1210 (per curiam). The court here considered the predisposition report and all evidence submitted. The court was aware that the predisposition report contained seriously prejudicial assertions against the defendant; but, it also had the evidence submitted by the defendant that controverted those assertions. The juvenile court apparently weighed this conflicting evidence and relied upon it to the extent it found it the evidence probative. See LSA-Ch.C. art. 893B. Further, even with two professional recommendations of commitment, and noting that it had reservations, the court maintained that the "goal ... is that [the defendant] is going to be returned to the community" and that outcomes were generally better without commitment.
We recognize that maintaining a juvenile defendant in his community may often be preferable to commitment. In this case, however, we question whether the juvenile court's disposition adequately addresses the circumstances of this case, the defendant's needs, and the best interest of society. See LSA-Ch.C. art. 901(B). The defendant did not accept responsibility for his repeated horrific offenses against the victim. His parents did not believe their son was guilty of the multiple charged offenses against him. The probation officer believed the behavior would continue if the defendant was allowed to remain in his parents' home. Both the probation officer and the clinical psychologist recommended a custodial environment. We find it hard to imagine how returning this defendant to his community will result in a better outcome than commitment. Further, we believe a suspended sentence minimizes the defendant's despicable acts. But, given the juvenile court's wide discretion in considering dispositional options, and even though this Court may have decided this case differently as the factfinder, we are constrained to affirm this adjudication because we find no manifest abuse of that discretion in this case.
ADJUDICATIONS AND DISPOSITION AFFIRMED.
Crain, J. dissents.

The defendant was also alleged to be delinquent under petition number 110,528 based upon the alleged commission of sexual battery, obscenity, and second degree rape with a different victim, his younger female cousin. The juvenile court adjudicated the defendant delinquent as to indecent behavior with a juvenile and sexual battery; committed him to the Office of Juvenile Justice until his 21st birthday; suspended that disposition; and, placed him on supervised probation for two years. The State has also appealed that adjudication and disposition. See State in Interest of R.K., 18-0412 (La. App. 1 Cir. 9/24/18), 258 So.3d 939, 2018 WL 4561436.

We note that 2018 La. Sess. Law Serv. Act 467 amended and reenacted LSA-Ch.C. arts. 801, 897.1, and 901. According to newly added LSA-Ch.C. art. 897.1G, its provisions "shall apply to all children in the custody of the Department of Public Safety and Corrections, Office of Juvenile Justice, on or after August 1, 2018."

Because the defendant was not adjudicated as to a LSA-Ch.C. art. 897.1 offense, LSA-Ch.C. art. 897 applies. The penalty for sexual battery, in pertinent part, is imprisonment, with or without hard labor, without the benefit of parole, probation, or suspension of sentence, for not more than ten years. See LSA-R.S. 14:43.1C(1). The penalty for indecent behavior with juveniles is a fine of not more than $5,000, or imprisonment with or without hard labor for not more than seven years, or both. See LSA-R.S. 14:81H(1).

Dr. Romano's conclusion is based on the facts of this case and those in State in the Interest of R.K. , 18-04112 (La. App. 1 Cir. 9/24/18), 258 So.3d 939, 2018 WL 4561436.

We note that the juvenile court imposed a single disposition despite multiple adjudications in this case. In contrast to adult cases, which require separate sentences for each conviction to be appealable, it is appropriate in juvenile cases for a court to declare a single disposition for multiple adjudications. See State in Interest of J.C. , 09-2000 (La. App. 1 Cir. 7/15/10), 2010 WL 2802104 *4 (unpublished).