NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2019 KJ 1284

STATE OF LOUISIANA,
IN THE INTEREST OF D.T.

Judgment Rendered:  __FEB 2 1 2020__

* * * * *

Appealed from the Juvenile Court
Parish of East Baton Rouge, State of Louisiana
No. JU113470

The Honorable Adam J. Haney, Judge Presiding

* * * * *

Hillar C. Moore III                          Attorneys for the State of Louisiana
District Attorney
Allison Miller Rutzen
Assistant District Attorney
Baton Rouge, Louisiana


Katherine M. Franks                          Attorney for Defendant/Appellant,
Madisonville, Louisiana                       D.T.


* * * * *

BEFORE:  WHIPPLE, C.J., GUIDRY AND BURRIS,[1] JJ.

---

[1]     The Honorable William J. Burris, retired, is serving as judge *pro tempore* by special appointment of the Louisiana Supreme Court.

**BURRIS, J.**

D.T., a fifteen-year-old juvenile,[2] was adjudicated a delinquent for one count of simple burglary and committed to the Department of Public Safety and Corrections (DPSC) for a period of twelve months. On the same date the disposition was imposed, D.T.'s probation for a prior adjudication based on simple burglary was revoked and that disposition was made executory. The terms of commitment in the two proceedings were ordered to be served consecutively. D.T. now appeals, challenging both the adjudication and disposition. We affirm.

## FACTS

During December 2018 and January 2019, several vehicles were broken into while parked at the Hidden Oaks apartment complex, located at 10707 Industriplex Boulevard in Baton Rouge. At the adjudication hearing, Dantee Vessel testified that on or around December 28, 2018, his wallet was stolen from the center console of his unlocked 2018 Toyota Tundra.[3] Tyree Moses testified that in December 2018, between Christmas and New Year's, someone broke a window of his 2009 Chevy Tahoe and stole his cell phone and wallet, which contained credit cards and three hundred dollars. Thomas Dominque, Sr., testified that on or about January 3, 2019, a window of a truck owned by his trucking company was broken; however, nothing was taken from the vehicle. Nancy Elzy testified that on or about January 18, 2019, someone broke a window of her Chevy Camaro and stole her Steve Madden backpack, which contained approximately five hundred dollars, a necklace, and perfume. Finally, Phong Vu testified that on or about January 22, 2019, his backpack, containing three iPhones, a scanner, and SIM cards, was stolen from his

---

[2] According to the petition, D.T.'s date of birth is December 16, 2003.

[3] While the State inadvertently referenced a future date of December 28, 2019 in questioning Mr. Vessel, the adjudication hearing took place on April 3, 2019 and the victim's testimony clearly reflects that the incident occurred during December 2018.

AT&T company vehicle, a Ford Fusion Hybrid, which may have been unlocked while parked at Hidden Oaks during an installation job.

Detective Brandon Berggren of the East Baton Rouge Parish Sheriff's Office, Armed Robbery and Burglary Division, investigated the string of burglaries and suspected the involvement of D.T. and Ladarius Porter, an adult suspect in other investigations. After advising D.T. of his *Miranda*[4] rights, Detective Berggren interviewed him in the presence of his mother. According to Detective Berggren, D.T. admitted he committed burglaries with Porter, and admitted he was involved in at least one of the vehicle burglaries at the apartment complex, specifying a camouflage backpack was taken from the vehicle. D.T. further admitted he had been in possession of but then lost a cell phone stolen from the AT&T vehicle, which had been activated in D.T.'s father's name. D.T. did not testify at the hearing.

The petition filed by the state alleged D.T. was delinquent based on eight counts of simple burglary and six counts of simple criminal damage to property. The juvenile court adjudicated D.T. delinquent on one count of simple burglary, specifically, "Count 1," in which "the camouflage backpack was taken."

## SUFFICIENCY OF THE EVIDENCE

On appeal, D.T. contends it was error for the juvenile court to adjudicate him a delinquent based solely on his uncorroborated confession. D.T. contends the key issue is not whether a criminal act was committed, but whether it was proven that he committed the criminal act.

In a juvenile adjudication proceeding, the State must prove beyond a reasonable doubt that the juvenile committed a delinquent act alleged in the petition. La. Ch. Code art. 883. The reasonable doubt standard is no less severe than the burden of proof required in an adult proceeding. *State in Interest of J.S.*, 18-1245

---

[4]    *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966).

(La. App. 1 Cir. 12/21/18), 268 So. 3d 311, 316. The constitutional standard of review for juveniles is likewise identical to that for adults enunciated in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); La. Ch. Code art. 883; *State in Interest of E.S.*, 18-01763 (La. 10/22/19), ___ So. 3d ___, ___ (2019WL5435954, *6); *State ex rel. R.T.*, 00-0205 (La. 2/21/01), 781 So. 2d 1239, 1241. That is, the appellate court must determine whether, upon viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could find the State proved all of the essential elements of the crime and the identity of the perpetrator of the crime beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789; *State in Interest of P.H.*, 18-1080, 2018WL5733011, *2 (La. App. 1 Cir. 11/2/18). Where the issue is the accused's identity as the perpetrator, the State is required to negate any reasonable probability of misidentification. *State in Interest of D.P.*, 18-1431, 2019WL968056, *2 (La. App. 1 Cir. 2/28/19); *see also State v. Calloway*, 18-1396 (La. App. 1 Cir. 4/12/19), 276 So. 3d 133, 142. Further, because review of law and facts in a juvenile delinquency proceeding is constitutionally mandated, an appellate court must review the record to determine if the juvenile court was clearly wrong in its factual findings. *See* La. Const. art. 5, §10; *State in Interest of T.C.*, 18-1246 (La. App. 1 Cir. 12/21/18), 269 So. 3d 716, 718-19.

As it applies here, simple burglary is the unauthorized entering of any vehicle with the specific intent to commit a felony or any theft therein. *See* La. R.S. 14:62A; *State in Interest of D.M.*, 17-1418, 2018WL1007352, *4 (La. App. 1 Cir. 2/21/18). Specific intent is "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La. R.S. 14:10(1). Specific intent can be formed in an instant. *State in Interest of T.C.*, 269 So. 3d at 719. Because it is a state of mind, specific intent need not be proven as a fact, but may be inferred from the circumstances

4

surrounding the offense and the accused's actions. *State v. Mickelson*, 12-2539 (La. 9/3/14), 149 So. 3d 178, 182.

The state presented evidence of two burglaries that involved stolen backpacks, both occurring in January 2019 at Hidden Oaks. First, Ms. Elzy's Steve Madden backpack, containing cash and other items, was stolen during the burglary of her Chevy Camaro while it was parked in front of her Hidden Oaks apartment. Second, Mr. Vu's backpack, containing three iPhones and other items, was stolen from his AT&T company vehicle during an installation job at Hidden Oaks. Mr. Vu testified that he informed the East Baton Rouge Parish Sheriff's Office that a check of the IMEI numbers indicated the stolen phones had been activated, with two registered under the name of D.T.'s father and one registered under the name Don King. Consistent with Mr. Vu's testimony, the State introduced a copy of Mr. Vu's email dated January 24, 2019, providing the names in which the phones were activated and the respective addresses listed for the phones.[5]

Detective Berggren testified that D.T. confessed to committing some of the vehicle burglaries at Hidden Oaks. Detective Berggren also testified that D.T.'s statements regarding the burglaries were consistent with the statements from other suspects, although each suspect attempted to limit his own involvement. Further, D.T. admitted that he committed burglaries at Hidden Oaks with Ladarius Porter and that a camouflage backpack was stolen from one of the vehicles. Detective Berggren further testified that D.T. admitted his involvement in the burglary of the AT&T vehicle, stating that D.T. remembered that specific incident and that Porter was the one who went into the vehicle. The defendant also admitted possessing at least one of the cell phones stolen from the AT&T vehicle. Specifically, D.T. stated that he and his brother each possessed one of the three stolen cell phones, but lost them.

---

[5]    Though Ms. Elzy and Mr. Vu detailed the contents of their backpacks, neither was asked to describe their backpacks' color or design.

The record reflects the juvenile court adjudicated D.T. delinquent based on one count of simple burglary, clarifying it was the offense to which D.T. confessed, in which a camouflage backpack was taken from a vehicle. On prompting, the juvenile court clarified the adjudication was based on "Count 1." Count one refers to a simple burglary that occurred on or about December 25, 2018 through December 26, 2018. However, both victims of the offenses involving backpacks, Ms. Elzy and Mr. Vu, testified that their backpacks were taken from their vehicles in January 2019. Because the date of the offense is not an element of the crime of simple burglary, the State was not required to prove the offense occurred on the date specifically alleged in the charging instrument. *See State v. Brown*, 421 So. 2d 854, 856 (La. 1982); *State v. S.L.D.*, 08-549 (La. App. 3 Cir. 11/5/08), 997 So. 2d 759, 766, *writ denied*, 09-0245 (La. 10/30/09), 21 So. 3d 272. Consequently, the numbering of the counts in the petition is insignificant to the delinquency adjudication.

The juvenile court accepted Detective Berggren's testimony regarding D.T.'s confession.[6] The juvenile court was the trier of fact charged with making credibility determinations and deciding the weight to attribute to the evidence. *See State in Interest of D.P.*, 2019WL968056 at *3. In the absence of internal contradictions and irreconcilable conflicts with physical evidence, the testimony of one witness, if believed by the trier of fact, is sufficient to support an adjudication. *State in Interest of T.C.*, 269 So. 3d at 719. Further, once the crime itself has been established, a confession alone may be used to identify the accused as the perpetrator. *State v. Celestine*, 452 So. 2d 676, 678 (La. 1984); *State ex rel. D.F.*, 08-0182 (La. App. 1 Cir. 6/6/08), 991 So. 2d 1082, 1085, *writ denied*, 08-1540 (La. 3/27/09), 5 So. 2d 138.

---

[6] D.T. filed a motion to suppress his unrecorded statements; however, after finding D.T. was properly advised of his constitutional rights in the presence of his mother, the juvenile court allowed Detective Berggren to testify about the statements D.T. made. D.T. does not challenge that ruling on appeal.

Viewing the evidence in the light most favorable to the prosecution, we find that any rational trier of fact could have found beyond a reasonable doubt and to the exclusion of every reasonable hypothesis of innocence that D.T. was guilty of simple burglary. D.T. confessed that he participated with Porter in the burglary of vehicles at the apartment complex. D.T. also described removing a backpack from one of the vehicles, and two of the victims testified their backpacks were stolen. The failure to prove the particular design of the stolen backpacks does not create reasonable doubt that D.T. committed simple burglary. This assignment of error lacks merit.

## DISPOSITION

Next, D.T. contends the disposition imposed by the juvenile court is excessive because it includes confinement and because it was ordered to be served consecutive with the disposition in another case.

D.T. concedes that his predisposition report (PDI) reflects a need for supervision, and he has a history of school absenteeism and failing grades, but contends he is not a violent offender and there is reason to believe he could succeed with intense monitoring and mentoring. His mother described him as a "totally different child" following his initial detention in this case and told the court she was working to move him from the environment in which they were living. Further, his probation officer said that he reported to her regularly while awaiting disposition, and only one of his drug tests came back positive. D.T. contends that housing him with violent offenders in a "failing juvenile facility" does little to rehabilitate him or provide a skill set for adulthood. He concludes that even if the juvenile court's determination that incarceration was required was appropriate, making the disposition run consecutive to the probation revocation results in an excessive disposition for the single delinquency adjudication.

After adjudicating a child to be delinquent, a court should impose the "least restrictive disposition" authorized by Louisiana Children's Code articles 897

7

through 900, which the court finds is consistent with the circumstances of the case, the needs of the child, and the best interest of society. La. Ch. Code art. 901B. "[I]n considering dispositional options, the court shall not remove a child from the custody of his parents unless his welfare or the safety and protection of the public cannot, in the opinion of the court, be adequately safeguarded without such removal." La. Ch. Code art. 901A. Commitment of the child to the custody of DPSC may be appropriate if (1) there is an undue risk that during the period of a suspended commitment or probation the child will commit another crime; (2) the child is in need of correctional treatment or a custodial environment that can be provided most effectively by his commitment; (3) a lesser disposition will deprecate the seriousness of the child's delinquent act; or (4) the delinquent act involved the illegal carrying, use, or possession of a firearm. La. Ch. Code art. 901C; *State in Interest of R.K.*, 18-0412 (La. App. 1 Cir. 9/24/18), 258 So. 3d 939, 941. A juvenile court is given wide discretion in imposing a disposition within statutory limits, and its disposition should not be set aside in the absence of a manifest abuse of discretion. *State in Interest of R.K.*, 258 So. 3d at 944.

In a juvenile disposition, the judgment may not remain in force for a period exceeding the maximum term of imprisonment for the felony forming the basis for the adjudication. La. Ch. Code art. 898A. The penalty for simple burglary is a fine of up to two thousand dollars, imprisonment with or without hard labor for up to twelve years, or both. La. R.S. 14:62B. The disposition in this case of twelve months does not exceed the maximum term of imprisonment for the felony forming the basis for the adjudication of delinquency.

Nonetheless, a juvenile in a delinquency proceeding has the same constitutional rights guaranteed to criminal defendants, except the right to a jury trial. La. Ch. Code art. 808. Article I, Section 20, of the Louisiana Constitution prohibits the imposition of excessive punishment. Even a disposition within

8

statutory limits may violate a juvenile's constitutional right against excessive punishment and is subject to appellate review. Generally, a disposition will be considered excessive if it is grossly disproportionate to the severity of the crime forming the basis for the adjudication or is nothing more than the needless imposition of pain and suffering. A disposition is grossly disproportionate if, when the crime and punishment are considered in light of the harm to society, it is so disproportionate as to shock one's sense of justice. *State in Interest of C.T.*, 15-1864 (La. App. 1 Cir. 4/15/16), 195 So. 3d 70, 76, *affirmed*, 16-0939 (La. 10/18/17), 236 So. 3d 1210.

On May 9, 2019, the juvenile court held a disposition hearing for this case and a probation revocation hearing for case number 113115. According to the record on appeal, the petition for delinquency in case number 113115 was based on an allegation of simple burglary committed in September 2018, some two months before the burglaries at issue in this case, and D.T. was placed on probation in January 2019. D.T. was arrested in connection with the instant case in March 2019, and remained at the detention center until April 3.

D.T.'s probation officer, Chasity Byrd, testified that she only supervised his probation for a short time before he was arrested in connection with the current case. However, she indicated D.T.'s school attendance was a major issue. She stated that he checked in every day with her by phone, though not always at the agreed-upon time. Ms. Byrd further testified that D.T.'s mother at one point recommended GPS monitoring because she was working two jobs and D.T.'s father did not live in the home. Ms. Byrd described marijuana as "an issue," but stated D.T. had been testing negative since being home and his drug screen taken the day of the disposition/revocation hearing was negative.

According to T.T., D.T.'s mother, D.T. had been doing well following his April release from the detention center. She added, "He's a totally different child.

9

I'll tell you that." When the juvenile court questioned whether the improvement was a temporary rather than a permanent change, T.T. responded that she was attempting to move from the current environment where they lived. Based on the testimony, the juvenile court continued the hearing to monitor D.T.'s behavior and see "where [his] head's at" and whether the change in D.T.'s behavior was "going to stick."

The hearing resumed on June 26, 2019. Demetris Kent, standing in for Ms. Byrd, testified that Ms. Byrd indicated that there had been no changes. D.T. was attending summer school and missed four days, though he provided a doctor's excuse for two of them. His drug screen, taken the day of the hearing, was negative, but it was noted that one of his past drug tests was positive. T.T. testified that they were still living at 10707 Industriplex Boulevard, where the instant offense took place.

Prior to the disposition hearing, the juvenile court ordered a detailed PDI, which was filed into the record. The PDI indicated that D.T. had three referrals to juvenile court and two adjudications, including the instant offense. The report concluded that commitment to the DPSC was appropriate for this case. The PDI stated that D.T. continued to make poor decisions and to commit further delinquent acts. The PDI explained D.T. was placed on supervised release from detention prior to being placed on supervised probation in case number 113115, but D.T. was unable to succeed. The PDI further stated that "[D.T.'s] delinquent conduct was the result of circumstances likely to recur," noting that he was placed on supervised probation on January 9, 2019, only to return on March 1, 2019, on similar allegations. The PDI listed D.T.'s prior and pending offenses, which included burglaries, theft, and resisting an officer, noting some charges were dismissed.

The juvenile court noted that the term of commitment under case number 113115 was eighteen months and revoked D.T.'s probation, making the balance of that disposition executory. Although the PDI for the instant offense recommended

10

a disposition of three years, the court imposed a twelve-month disposition, to be served consecutive to the term in case number 113115.

In general, concurrent terms are required only when the offenses derive from the same act or transaction or are part of a common scheme or plan and, even then, only if the sentencing judge does not order the sentences to be served consecutively. Otherwise, the terms must be served consecutively, unless ordered to run concurrent. La. Code Crim. Pro. art. 883. Here, the offenses occurred on different dates and do not derive from the same act or transaction and were not part of a common scheme or plan; therefore, a concurrent disposition was not required. *See* La. Code Crim. Pro. art. 883.

The record reflects that the juvenile court carefully considered the circumstances of the case, the needs of the child, and the best interest of society. D.T.'s history shows an undue risk that he will commit another crime during a period of suspended commitment or probation. *See* La. Ch. Code art. 901(C)(1). Further, D.T. needs treatment that can best be provided in custodial care. Based on the facts and circumstances of this case, we do not find the juvenile court erred or abused its discretion in committing D.T. to DPSC's custody for a term of twelve months, to be served consecutive to the term made executory in case number 113115. This assignment of error is without merit.

**ADJUDICATION AND DISPOSITION AFFIRMED.**